STATE OF VERMONT

SUPERIOR COURT | ENVIRONMENTAL DIVISION
Docket No. 7-1-17 Vtec

| | |
|---|---|
| R.L. Vallee, Inc et al TS4 | DECISION ON MOTIONS |

This is an appeal by R.L. Vallee Inc.; Rodolphe J. Vallee, Trustee of the Rodolphe E. and Elizabeth W. Vallee Trust (the Vallee Trust); Tim Vallee; and Amy Norris (collectively, "Vallee"), from National Pollutant Discharge Elimination System General Permit 3-9007 for stormwater discharges from the state transportation separate storm sewer system (the TS4 permit). According to the TS4 permit, ANR issued the TS4 permit to combine post-construction stormwater requirements for road and non-road infrastructure owned or controlled by VTrans. Among other things, the permit requires VTrans to develop a phosphorus control plan in the Lake Champlain Basin.

The matter is now before the Court on the Agency of Natural Resources' (ANR) motion to dismiss questions, and on the Vermont Agency of Transportation's (VTrans) motion to dismiss the appeal on the premise that appellants fail to fulfill party status requirements.

Vallee is represented by Jon Anderson, Esq. and Alexander J. LaRosa, Esq. ANR is represented by Elizabeth B. Schilling, Esq., and Kane Smart, Esq. VTrans is represented by John Dunleavy, Esq. and Justin Kolber, Esq.

## I.   Motion to Dismiss for Lack of Party Status

Under 10 V.S.A. § 8504(a), a person aggrieved by an act or decision of ANR can appeal that decision to the Environmental Division. An appellant claiming party status as a person aggrieved under § 8504(a) is automatically accorded party status when a notice of appeal is filed, unless the Court decides on motion to dismiss the party. V.R.E.C.P. 5(d)(2).

A person is "aggrieved" by an ANR decision if that person "alleges an injury to a particularized interest protected by the provision[] of law listed in [10 V.S.A. § 8503] attributable to [the decision on appeal] that can be redressed by the Environmental Division." 10 V.S.A. § 8502(7). To satisfy standing requirements, the injury or threat of injury alleged must be real, and

1

not simply theoretical.  Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 9, 182 Vt. 234.  We have held that this requires a showing that there is a "reasonable possibility" the decision on appeal will affect the would-be appellants' particularized interests.  In re Bennington Wal-Mart Demolition / Construction Permit, No. 158-10-11 Vtec, slip op. at 10–11 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.).

The decision on appeal here is ANR's decision to issue the TS4 permit pursuant to 10 V.S.A. §§ 1258 and 1264, which authorize ANR to issue permits regulating stormwater and discharges into waters of the State.

To be an aggrieved person, therefore, Vallee must show there is a reasonable possibility that ANR's decision to issue the TS4 permit will impact an interest that is particular to Vallee and which is protected by 10 V.S.A. §§ 1258 and 1264.

We consider motions challenging an appellant's party status pursuant to Vermont Rule of Civil Procedure 12(b)(1).  Orlandi Act 250 Kennel Permit (Application No. 9A0349), No. 71-5-14 Vtec, slip op. at 4–5 (Vt. Super. Ct. Envtl. Div. Feb. 13, 2015) (Durkin, J.).  Once party status is challenged by a 12(b)(1) motion, the party asserting status must make a threshold showing of evidence or testimony to be introduced at the merits hearing in support of that status.  In re Barefoot & Zweig Act 250 Application, No. 46-4-12 Vtec, slip op. at 5–6 (Vt. Super. Ct. Envtl. Div. Mar. 13, 2013) (Durkin, J.).  In deciding a 12(b)(1) motion, we accept uncontroverted factual allegations by the nonmoving party as true and construe them in the light most favorable to the nonmoving party.  Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245.

### a. R.L. Vallee, Inc.'s Party Status Claim

This matter is related to a separate appeal by R.L. Vallee, Inc. from an Act 250 decision approving proposed improvements to I-89 Exit 16, currently pending in this Court under docket number 169-12-16 Vtec.  In that matter, Vallee filed a motion for party status under various Act 250 criteria.  Diverging Diamond Interchange A250, No. 169-12-16 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Mar. 17, 2017) (Walsh, J.).  The motion included affidavits from experts in hydrology, stormwater, and total maximum daily loads.  Id. at 3.  We granted the motion, holding that Vallee showed a reasonable possibility that the proposed improvements would affect its particularized interests primarily in two ways.  First, Vallee showed a reasonable possibility that

stormwater runoff from the improved interchange could deposit pollutants onto its property, thereby affecting Vallee's interest in keeping its property free from pollution. Id. at 4. Second, Vallee showed a reasonable possibility that the improved interchange would increase chloride discharges into nearby Sunnyside Brook, and that this could force Vallee to decrease its own chloride discharges into the brook. Id. at 5.

In its opposition to VTrans' motion to dismiss in the TS4 permit appeal, Vallee argues that R.L. Vallee, Inc. has party status to appeal the TS4 permit for essentially the same reasons it has party status to appeal the Act 250 decision, because the TS4 permit regulates stormwater discharges from the I-89 Exit 16 interchange.

The TS4 permit regulates discharges from the same impervious surface at issue in the related Act 250 appeal. For the same reasons set out in our decision on party status in that appeal, we conclude that there is a reasonable possibility that the TS4 permit will affect R.L. Vallee, Inc.'s particularized interests in keeping its property free from pollution, and in not having to make unnecessary modifications to its own chloride discharges into Sunnyside Brook.

### b. Tim Vallee, Amy Norris, and the Vallee Trust Party Status Claim

Vallee states that Tim Vallee and the Vallee Trust each own property in St. Albans on Lake Champlain, and that Amy Norris is a beneficiary of the Trust who frequently stays at the Trust's lakefront property. Vallee asserts that Tim Vallee and beneficiaries of the Vallee Trust use and enjoy Lake Champlain from their lakefront properties. Attached to Vallee's pleading are affidavits by Tim Vallee and Amy Norris stating that they use and enjoy Lake Champlain for swimming, boating, and other recreational activities.

Vallee contends that phosphorus and chloride discharges cause algae blooms in the lake adjacent to the lakefront properties, and that these algae blooms interfere with the use and enjoyment of the lakefront properties, and also reduce the value of these properties. Vallee asserts that the TS4 permit will allow chloride and phosphorus discharges to increase, thereby

aggravating the algae bloom problem. Vallee cites a number of publications to support these assertions.[1]

The Water Resources Board has addressed a challenge to standing in a case similar to the one now before us. In In re Vermont Agency of Transportation (Route 7), a group of appellants appealed a permit issued by ANR to VTrans for stormwater runoff from Route 7 into a series of brooks and Lake Champlain. No. WQ-03-01, Chair's Order (Water Res. Bd. Dec. 3, 2003) 2003 WL 21321718, at *1. Appellants argued that the permit would allow increased runoff that would cause erosion on their property, and would pollute Lake Champlain in a way that would compromise their recreational use of the lake and harm their businesses by reducing tourism. Id. The Water Resources Board held that these interests were sufficiently particularized to distinguish them from the general public's interest. Id. at *7. The Board further held that injury to these interests might result from the permitted activity, noting that the appellants were not required, in contesting a motion to dismiss for lack of standing, to conclusively prove that stormwater runoff would increase pollution in the lake, or demonstrate the precise mechanics of how this would happen. Id. at *8.

The same reasoning applies here. Vallee has made a threshold showing of a particularized interest because Tim Vallee and the Vallee Trust own lakefront property and Tim Vallee and Amy Norris engage in recreational activities in and on the lake. Vallee has also made a threshold showing that there is a reasonable possibility that the TS4 permit could affect these particularized interests by causing or contributing to algae blooms.

### c. Conclusion

Because Vallee has made a threshold showing of a reasonable possibility that the TS4 permit will impact it particularized interests, VTrans' motion to dismiss on party status grounds is **DENIED**.

---

[1] We have not examined these publications, and we make no assessment of the weight they might carry in demonstrating a causal link between stormwater from VTrans infrastructure and algae blooms in Lake Champlain. Rather, we accept these references as proffers of evidence that could be offered at trial to support Vallee's position. See In re Barefoot & Zweig Act 250 Application, No. 46-4-12 Vtec, slip op. at 5–6 (Vt. Super. Ct. Envtl. Div. Mar. 13, 2013) (Durkin, J.) (to successfully defeat a motion to dismiss for lack of party status, party asserting status must describe evidence or testimony that would be introduced at a merits hearing to support party status). We accept Tim Vallee and Amy Norris's affidavits for the same purpose.

## II. Motion to Dismiss Questions 1, 7, 17 and 21

ANR moves to dismiss Questions 1 and 17 pursuant to V.R.C.P. 12(b)(1), arguing that these questions are not yet ripe for review. ANR further moves to dismiss Questions 7 and 21 pursuant to V.R.C.P. 12(b)(6) for failure to state a claim upon which relief may be granted. VTrans joins the motion.

### a. Motion to dismiss questions 1 and 17 as unripe

As noted above, in ruling on a 12(b)(1) motion we accept uncontroverted factual allegations by the nonmoving party as true and construe them in the light most favorable to the nonmoving party. Rheaume, 2011 VT 72, ¶ 2.

We only have subject matter jurisdiction to adjudicate actual cases and controversies. Parker v. Town of Milton, 169 Vt. 74, 77 (1998). A case or controversy does not yet exist where, for example, a party challenges a zoning regulation that has not been adopted, Paynter v. Town of Pittsford Planning Comm'n, Selectboard, No. 2009-307, slip op. at 3 (Vt. Jan. 15, 2010) (unpublished mem.), or a permit that has not yet been applied for or issued, In re 232511 Investments, Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409. In such cases the anticipated action that has not yet taken place, or the action that has not been completed, is not ripe for review. In re Interim Bylaw, Waitsfield, 170 Vt. 541, 542 (1999); In re Maple Tree Place, 156 Vt. 494, 500 (1991).

The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." In re the Intervale Center, Inc., No. 89-5-08 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Feb. 24, 2009) (Durkin, J.) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)).

Question 1 asks whether the TS4 permit "eliminate[s] the adverse impacts on water quality from the discharge of phosphorus to Lake Champlain from lands owned or controlled by" VTrans. ANR explains that the TS4 permit requires VTrans to develop a Phosphorus Control Plan as a component of a Notice of Intent to Discharge (NOI) and Stormwater Management Plan

(SWMP), which must then be approved by ANR. VTrans has one year from the time the TS4 Permit is issued to submit its NOI and SWMP to ANR; in the meantime, VTrans discharges are subject to existing permits and authorizations.

Question 17 asks whether best management practices to control chloride that VTrans will propose for discharges in chloride-impaired waters are designed to control chloride discharges. ANR explains that this, too, is something that VTrans will have to propose, and ANR will have to approve, as part of the SWMP.

ANR argues that until it reviews and approves the SWMP, Questions 1 and 17 are not ripe for review. Vallee concurs in its response.

Because the TS4 permit alone is not designed to address impacts from phosphorus discharges or assess best management practices regarding chloride discharges until ANR approves a SWMP, Question 1 and 17 are not ripe for review. ANR's motion to dismiss Question 1 and 17 is therefore **GRANTED**.

### b. Motion to dismiss for failure to state a claim

ANR moves to dismiss Questions 7 and 21 for failure to state a claim pursuant to V.R.C.P. 12(b)(6). In deciding a 12(b)(6) motion we accept factual allegations in the non-moving party's pleadings and reasonable inferences from those facts as true. Rheaume, 2011 VT 72, ¶ 2.

Question 21 asks whether the TS4 permit is consistent with the Green Stormwater Infrastructure plan signed into effect by Governor Peter Shumlin. ANR argues that the plans to which this question refers do not contain any enforceable legal requirements applicable to the TS4 permit. In response, Vallee asks to withdraw the question. We grant the request to withdraw, and hereby **DISMISS** Question 21.

Question 7 asks "[t]o what standard must currently permitted discharges not subject to the TS4 Permit be treated?" In a de novo review of an ANR permit decision, we "apply[] the substantive standards that were applicable before" the ANR. 10 V.S.A. § 8504(h). Our reach in this review is as broad as that of ANR when it considered the permit, but not broader. See In re Torres, 154 Vt. 233, 235 (1990). In deciding whether to grant a permit that allows discharges, ANR does not consider discharges that are not covered by the permit. Likewise, discharges not covered by the permit are outside the scope of our review on appeal. While Question 7 attempts

6

to raise the issue of discharges not covered by the TS4 permit, such discharges are outside the scope of our review. ANR's motion to dismiss Question 7 is therefore **GRANTED**.

Electronically signed on July 18, 2017 at 09:41 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division